UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALTER DOWMAN and JONATHAN NEEDHAM, | Civil Action No: 16-cv-8129 (PGS)(LHG) |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| CHUBB CORPORATION, et al., | |
| Defendants. | |

Plaintiffs Jonathan Needham and Walter Dowman appeal the Magistrate Judge's February 6, 2018 order, which denied Plaintiffs' request for limited discovery. The Court affirms the decision of the Magistrate Judge for the reasons set forth herein.

### BACKGROUND

This matter arises from a dispute over ERISA benefits between Plaintiffs and Defendants The Chubb Corporation, Bellemead Development Corporation, Halifax Plantation Golf Management, Inc., and the Retirement Administrative Committee. Both Needham and Dowman are employed at Halifax, a golf club located in Florida, and work as general manager and golf pro, respectively. (Complaint at ¶¶ 4-5, 8). Halifax is a wholly-owned subsidiary of Bellemead, which itself is a wholly-owned subsidiary of Chubb, a New Jersey-based property and casualty insurance firm. (*Id.* at ¶¶ 6-8).

Plaintiffs contend that Chubb has created "sham" corporations "to wrongfully exclude employees from participating in the ERISA benefits plan offered to [Bellemead] and Chubb employees." (*Id.* at ¶ 8). According to the Complaint, Bellemead, as a real estate management company, managed Halifax's business operations. (*Id.* at ¶ 12). Specifically, "[Halifax] officers

and/or directors were mainly management level employees of [Bellemead] or Chubb. Through these officers and directors, [Bellemead] and Chubb controlled the operations and management of [Halifax]." (*Id.* at ¶ 26). Plaintiffs also claim that "[Bellemead] employees worked right alongside [Halifax] employees, in some instances perform[ed] the exact same jobs under the direction and supervision of [Bellmead] management." (*Id.* at ¶ 15). According to the Complaint, when Plaintiff Needham was hired by Halifax in 1993, his "new hire coversheet" identified him as both a Bellemead and Halifax employee. (*Id.*). Similarly, while Plaintiff Bowman was considered a Halifax employee, he received his paychecks from Chubb. (*Id.* at ¶ 13).

Apparently, from 1992 to February 1998, Halifax employees, including Plaintiffs, were paid by Bellemead. (ECF No. 32-1, "Bernstein Declaration" at 3). "Bellemead issued Plaintiffs' W-2 Forms, and their paychecks included the Chubb logo but listed Bellemead as the payor." (*Id.*). Beginning in March 1998, Halifax created its own payroll system, which paid their employees directly and, the following year, created the Halifax Plantation 401(k) Profit Sharing Plan & Trust, which Plaintiffs are participants of. (*Id.*).

In March 2014, Needham was named President of Halifax. (*Id.* at ¶ 20). The following month, he learned that Bellemead employees were entitled to Chubb-sponsored employee plans that were not available to Halifax employees. (*Id.* at ¶¶ 21-23). Specifically, Bellemead employees were entitled to enroll in the Chubb Capital Accumulation Plan (hereinafter, "CCAP") and Employee Stock Ownership Plan (hereinafter, "pension plan"). (*Id.* at ¶ 23).

Upon discovering these plans, on July 1, 2015, Plaintiffs submitted a claim with Chubb's Employee Benefits Committee (hereinafter, the "Committee"), declaring that they "were entitled to the rights and benefits of the [CCAP] or [the pension plan]." (Bernstein Dec. at 4). The Committee, as the plan administrator for both plans, and with vested discretionary authority,

reviewed Plaintiffs' claim. (*Id.*). On December 29, 2015, the Committee denied Plaintiffs' claims for benefits. (Complaint at ¶ 34; ECF No. 32-3, "Dec. 29, 2015"). In this denial letter, the Committee explained to Plaintiffs that under both the CCAP and pension plan, only Eligible Employees and Participating Employers were entitled to participate in either plan. (*Id.*). However, because Halifax is not a Participating Employer, they were not entitled to benefits under either plan. In addition, the letter explained:

> Regardless of whether Halifax employees are or were under the review, supervision and control of [Bellemead] or of Chubb, or whether they are deemed to be or reclassified as employees of [Bellemead] or another Affiliate of [Bellemead] or Chubb, such characterization or reclassification does not create an entitlement of benefits if Halifax is not a Participating Employer.

(*Id.*).

On February 12, 2016, Plaintiffs appealed the Committee's adverse benefit determination. (Complaint at ¶ 34). Five months later, July 12, 2016, the Committee affirmed its denial of benefits. (*Id.* at ¶ 35; ECF No. 32-4 "July 12, 2016 Letter"). Again, the letter explained that while Plaintiffs were both employees of a Chubb subsidiary, because Halifax was not a Participating Employer under either plan, they were not entitled to benefits. (*Id.*). In addition, for the period before March 1998, during which Plaintiffs were paid on Bellemead's payroll, the Committee determined that they were still ineligible to participate in either plan. (*Id.* at 7). While Plaintiffs were on the payroll of a participating employer, Bellemead, the Committee explained:

> [T]hat determination does not complete the Committee's analysis. The person must also receive "Compensation from the Employer." "Compensation" is defined in Section 1.10 as "the aggregate remuneration received by an Employee . . . for Service with an Employer . . ." Section 1.9 defines "Service with an Employer" as "any period of employment . . . as an Employee of an Employer."
>
> The language in these sections of the Pension Plan, in the Committee's view, reflect the bedrock requirement that an individual can be eligible to participate in the Pension Plan only if he receives Compensation from a participating Employer for services provided to that Employer.

3

(*Id.* at 7-8). The Committee next reviewed Plaintiffs' employment records, which included Halifax's "Weekly Timesheet Reports", "Salary Control Report," "Employees by Department and Payroll" Report, "Employees by Department & Date Hired" Report, and "Employees by Department and Payroll" report. (*Id.* at 8). With this in mind, the Committee concluded:

> Based on its interpretation of the terms of the Pension Plan in relation to these facts, the Committee has determined that [Plaintiffs] did not receive Compensation from a participating Employer (e.g., Bellemead) for services provided to that Employer. Instead, they received compensation from Halifax for services provided to Halifax, which is not a participating Employer in the Pension Plan.
>
> As such, [Plaintiffs] were not eligible to participate in the Pension Plan prior to March 1998 because they were not an individual "in the employment in the United States or on the United States payroll of an Employer **and** who receives Compensation from the Employer. . ." (emphasis added).

(*Id.*). The Committee came to this same conclusion, with regards to Plaintiffs' eligibility under the CCAP. (*Id.* at 9-10).

Plaintiffs initiated this immediate action on November 1, 2016 asserting a two-count Complaint against Defendants, seeking: (1) "to enjoin further violations of ERISA"; and (2) to recover benefits pursuant Section 502(a)(1)(B), 29 U.S.C. § 132(a)(1)(B). Thereafter, the parties each submitted letter briefs addressing whether Plaintiffs are entitled to limited discovery beyond the administrative record. (ECF Nos. 21, 22). According to the Proposed Joint Discovery Plan, Plaintiffs sought discovery on the following topics:

- The corporate structure of Halifax Plantation Golf Management, Inc. ("Halifax") Bellemead Development Corporation ("BDC") and The Chubb Corporation ("Chubb").
- Whether or not the corporate formalities for Chubb, BDC and Halifax were observed.
- The extent to which Chubb, BDC and Halifax shared common ownership or financial control, common management.
- The interrelation of operations, and centralized control of labor and employment decisions, including the determination of what subsidiaries would

4

- be deemed a Participating Employer under the terms of the Plans between Chubb, BDC and/or Halifax.
- The extent of control over the manner and method by which the Claimants performed their work exerted by BDC and/or Chubb.
- The control exerted by Chubb over the operations of BDC and/or Halifax.
- The control exerted by BDC over the operations of Halifax.
- The Plan, its creation and all changes to the Plan over the years.
- The process employed by the Defendants to reach the decision to deny Plaintiffs benefits.
- The facts alleged in the Complaint by the Plaintiffs and the defenses raised by the Defendants.

(ECF No. 32-1, "Joint Proposed Discovery Plan" at 7-8). In Plaintiffs' letter, they argued that because they were not considered employees, the Committee had no authority to render a decision as to their claims. (ECF No. 21 at 2). In addition, Plaintiffs argued that the "proposed topics for discovery are for the purpose of discovering . . . whether or not there has been a misuse of the corporate form in order to disadvantage the Plaintiffs in terms of benefits received." (*Id.*). Defendants responded, arguing that because this is an action for ERISA benefits, Plaintiffs are limited to the administrative record, which exceeds 2000 pages. (ECF No. 22 at 1-2). Furthermore, to the extent that Plaintiffs seek to make their corporate form argument, Defendants contend that the administrative record contains substantial evidence for them to consider. (*Id.* at 3).

On February 6, 2018, the Magistrate Judge denied Plaintiffs' request on the record. (ECF No. 29, "Feb. 6, 2018 Transcript"). The Magistrate Judge was unpersuaded by Plaintiffs' contention that this matter is an "atypical" ERISA case, which warrants additional discovery; instead, she understood the issue to "come[] down to whether the committee could determine if Halifax was, in fact, plaintiff's employer as employer is defined in The Plan." (*Id.* at 4:16-20). Similarly, she found Plaintiffs' argument that the Committee lacked authority to review their claim "circular, at best." (4:22-5:1). Relying on *United Paperworkers International Union, Local No. 35 Pension Plan v. Arlington Sample Book Co.*, No. 83-2828, 1984 U.S. Dist. LEXIS 16483 (E.D.

Pa. May 23, 1984), the Magistrate Judge concluded that because the terms of "employer," "employee," and "participating employer" are all Plan terms subject to the Committee's interpretation, discovery beyond the administrative record was not warranted. (*Id.* at 5:12-6:7).

## LEGAL STANDARD

A magistrate judge may hear and determine any non-dispositive pretrial matter pending before the district court. *See* 28 U.S.C. § 636(b)(1)(A). The district court will only modify or set aside a magistrate judge's decision on these matters if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A district court will, therefore, "review a magistrate judge's findings of fact for clear error." *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10-6108, 2013 U.S. Dist. LEXIS 28374, at *3 (D.N.J. Feb. 28, 2013) (citing *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997). A finding is considered "clearly erroneous" when the court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 39 (1948). A decision is considered contrary to law if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co.*, 191 F.R.D. 59, 69 (D.N.J. 2000). The party appealing the magistrate's decision bears the burden of demonstrating that it was clearly erroneous or contrary to law. *Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 589, 591 (D.N.J. 1994).

## ANALYSIS

Here, Plaintiffs contend that because Halifax is a "corporate sham" of Bellmead and Chubb, limited discovery is necessary to establish that they are entitled to Chubb's CCAP and pension plans. Defendants respond, contending that Plaintiffs have failed to establish that the

Magistrate Judge's decision was clearly erroneous, or contrary to law, and that Plaintiffs' argument has no legal support. The Court agrees.

Under Section 502(a)(1)(B) of ERISA, a plan participant may bring a civil action "to recover benefits due to him [or her] under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). It is well-established that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, "[w]hen a plan grants its administrator such discretionary authority, trust principles make a deferential standard of review appropriate and we review a denial of benefits under an 'arbitrary and capricious' standard." *Fleisher v. Std. Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal quotation marks and citation omitted). Under this narrow standard of review, "a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009). Here, neither party disputes that the Committee had full discretion to review benefit claims under the Plans.

Where, as here, the denial of benefits is reviewed under the arbitrary and capricious standard, judicial review is limited to "the record available to the plan administrator in making its own decision." *Kosiba v. Merck & Co.*, 384 F.3d 58, 69 (3d Cir. 2004). This is consistent with "ERISA's goal of providing plan participants and beneficiaries an expeditious and inexpensive method of resolving . . . disputes" and "encourag[ing] the parties to resolve their disputes at the administrator's level." *O'Sullivan v. Metro. Life Ins. Co.*, 114 F. Supp. 2d 303, 309 (D.N.J. 2000). However, limited discovery may be appropriate where the plaintiff seeks "to prove a 'conflict of

interest, bias, or a pattern of inconsistent benefit decisions.'" *Delso v. Trs. of the Ret. Plan for the Hourly Emps. of Merck & Co.*, No. 04-3009, 2006 U.S. Dist. LEXIS 76369, at *5 (D.N.J. Oct. 20, 2006) (quoting *Otto v. W. Pa. Teamsters and Employers Pension Fund*, 127 F. App'x 17, 21 n.7 (3d Cir. 2005)). "If a plaintiff establishes a reasonable suspicion of misconduct, then courts should allow discovery requests reasonably likely to either confirm or disconfirm the presence of bias." *Id.* at *8. However, "to the extent Plaintiff seeks discovery into the merits of the [the Committee's] claim determination, it is clear that such discovery is prohibited." *Dandridge v. Raytheon Co.*, No. 08-4793, 2010 U.S. Dist. LEXIS 5854, at *8 (D.N.J. Jan. 26, 2010); *Mainieri v. Bd. of Trs. of the Operating Eng'rs Local 825 Pension Fund*, No. 07-1133, at *8 (D.N.J. Sept. 10, 2008) ("discovery can be taken with regard to issues that raise a good-faith allegation of procedural bias or structural conflict of interest -- but not for matters that merely speak to the merits of the administrator's decision").

Here, Plaintiffs do not argue that a purported conflict of interest, bias, or pattern of inconsistent benefit decisions exists, such that may warrant limited discovery. *See Delso*, 2006 U.S. Dist. LEXIS 76369, at *5. Instead, they contend that Chubb's "corporate form" creates a separate basis for limited discovery; however, this argument fails for several reasons. First, beyond the three exceptions discussed above, the Court is unaware of, and Plaintiffs do not cite, any case-law that supports granting limited discovery in ERISA denial of benefit matters for purposes of piercing the corporate veil. Second, Plaintiff's reliance on *Corrigan v. United States Steel Corp.*, 478 F.3d 718 (6th Cir. 2007) and *Hamilton v. Carell*, 243 F.3d 992 (6th Cir. 2001) are of no moment. *Corrigan* did not involve ERISA claims; instead, the plaintiffs brought state-law claims of fraud, breach of contract, and promissory estoppel against two parent companies that were not their direct employer. 478 F.3d at 724. However, the court held that the plaintiffs failed to present

sufficient evidence to find that an alter ego relationship existed between the parent companies and their employer. *Id.* at 726. In *Hamilton*, the Sixth Circuit noted that "[u]nder ERISA, courts have recognized the permissibility of ignoring the corporate form when failure to do so would undermine the purposes of the statute." 243 F.3d at 1003. However, *Hamilton* was concerned with ERISA liability based on an employer's breach of fiduciary duty, not a denial of benefits by an administrator. Moreover, like *Carrigan*, the court in *Hamilton* did not address the propriety of permitting limited discovery, for purposes of piercing the corporate veil, when the matter involves a denial of benefits by the ERISA plan administrator.

In sum, Plaintiffs have failed to meet their burden of establishing that the Magistrate Judge's decision was erroneous or contrary to law. As noted above, Plaintiffs fail to cite any case law that supports their position that they are entitled to limited discovery under these circumstances. Instead, it seems as if Plaintiffs seek additional discovery to dispute the outcome of the Committee's determination, which, as discussed above, is impermissible. For these reasons, the Magistrate Judge's Order is affirmed.

## ORDER

IT IS on this  11  day of  June , 2018,

**ORDERED** that the Magistrate's Order is affirmed.

_____
PETER G. SHERIDAN, U.S.D.J.