UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Walter Dowman & Jonathan Needham,<br><br>Plaintiffs,<br><br>v.<br><br>Chubb Corporation, *et al.*,<br><br>Defendants. | Civil Action No.<br>3:16-cv-8129 (PGS) (LHG)<br><br>MEMORANDUM |

**SHERIDAN, U.S.D.J.**

This action arises out of Defendants' denial of ERISA benefits to Plaintiffs Walter Dowman and Jonathan Needham, employees of Defendant Halifax Plantation Golf Management, Inc. ("Halifax")[1]. The review of this ERISA decision is brought before the Court on three motions:

1. <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 38), seeks (a) to dismiss Plaintiffs' claims against Defendants Halifax, Bellemead, and Chubb because they are not fiduciaries under the plan and (b) to uphold the Committee's determination as reasonable and based on substantial evidence, thus dismissing Plaintiffs' claim against the Committee

2. <u>Plaintiffs' Motion for Partial Summary Judgment</u>, (ECF No. 40), seeks an order finding that the Committee's denial of benefits to Plaintiffs was arbitrary and capricious.

3. <u>Defendants' Motion to Strike</u> Exhibit G to Plaintiffs' Motion for Partial Summary Judgment and the Declaration of Jonathan Needham, submitted with Plaintiffs' Reply Brief. (ECF No. 56).

---

[1] The Order was issued on March 29, 2019.

Plaintiffs aver that in the nineties they were employees of Bellemead and/or Chubb, and as such, they should be qualified members of the Chubb Pension Plan. The relationship among Halifax, Bellemead and Chubb is explained below.

I.

Halifax is a subsidiary of Bellemead, which, in turn, is a subsidiary of Chubb. The Committee is the current administrator of Chubb's Pension Plan ("Pension Plan"), Capital Accumulation Plan ("CCAP"), and Employee Stock Ownership Plan ("ESOP") (collectively, "the Plans").[2] Although Bellemead is a participating employer in the Plans, Halifax is not. Plaintiffs, relying upon corporate-veil-piercing arguments, contend they are in fact employees of Bellemead; not Halifax, and thus are eligible to participate in the Plans. More specifically, Plaintiffs contend that Chubb has created "sham" corporations "to wrongfully exclude employees from participating in the ERISA benefits plans offered to [Bellemead] and Chubb employees." (Complaint, ECF No. 1, at ¶ 8, 43). Specifically, "[Halifax] officers and/or directors were mainly management level employees of [Bellemead] or Chubb. Through these officers and directors, [Bellemead] and Chubb controlled the operations and management of [Halifax]." (Id. at ¶ 26). Plaintiffs also claim that "[Bellemead] employees worked right alongside [Halifax] employees, in some instances perform[ed] the exact same jobs under the direction and supervision of [Bellmead] management." (Id. at ¶ 15). Nonetheless, when Plaintiffs applied for Chubb's Plans, which were available to

---

[2] The administrative record refers to various committees that are responsible for administrating each plan: "Pension Committee" (referenced in the 1985 version of the Pension Plan, (CD 0053)); "Employee Benefits Committee" (referenced in the 2013 version of the Pension Plan, (CD 0095) and the CCAP (CD 0276)); and simply "the committee" (referenced in the ESOP, (CD 0443)). The parties agree that the Retirement Administrative Committee is responsible for administering all three plans, and that the other identifiers are former names for the same entity. (See Complaint at ¶ 9; Defendants' Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 38-1, at 6-7; see also CD 1105). The Court accepts the parties' representations that the Retirement Administrative Committee is the administrator of the plans. For simplicity, all committees referenced herein are referred to as "the committee."

Bellemead employees, the plan administrator, citing their status as Halifax employees, denied their claims. (CD[3] 1105-17).

## II.

Halifax was incorporated in Florida in 1992 as a wholly-owned subsidiary of Bellemead. It manages a single golf course in Ormond Beach, Florida. (Defendant's Statement of Material Facts, at ¶ 7-8; CD 1020, 1024-26, 1085). Plaintiff Needham worked at Halifax from April 12 to September 12, 1993, and then returned to the company as a general manager on July 29, 1996, and he still works there today. (*Id.* at ¶¶ 1-3; CD 773-74, 1119). Plaintiff Dowman has worked at Halifax since April 12, 1993, and is currently employed as a golf pro. (*Id.* at ¶¶ 4-5; CD 773-74).

Bellemead was incorporated in the State of Delaware in 1923 and became a wholly-owned subsidiary of Chubb INA Holdings, Inc., or its predecessor in the mid-1970s. (*Id.* at ¶ 9; CD 1105-06). Bellemead is a real estate management company that owns and manages multiple properties in the United States through subsidiary companies. (Def. SOMF ¶ 10; CD 1576). Chubb owns 100% of the outstanding stock of Bellemead, (Def. SOMF ¶ 11; CD 1120, 1575), which owns 100% of the outstanding stock of Halifax, (*id.* at ¶ 12; CD 1120, 1576).

From 1992 to February 1998, Halifax employees, including Plaintiffs, were paid from Bellemead's payroll. (Defendant's SOMF, at ¶ 13; CD 1106, 1119, 1127, 1146-47). Bellemead issued W-2 Forms, and paychecks, which listed Bellemead as the payor and included the Chubb logo. (*Id.* at ¶¶ 14-15; CD 1119; 1797-1826). Plaintiffs' payroll profile history lists their "Branch" as "Halifax P1 Golf" and their "Department and Section" as "Bellemead." (Defendant's SOMF, at ¶ 16; CD 1150-51, 1751-53). Despite the payroll records, Dowman was included on the June

---

[3] References to the administrative record are cited herein as CD (Chubb-Dowman) with their corresponding Bates-stamp numbers.

27, 1996 Halifax employee list, (Def. SOMF ¶17; CD 1119, 1152-54); the Halifax "Salary Control Report as of 07/02/97," (*Id.* at ¶ 18; CD 1119, 1152-54), and the July 23, 1997 Halifax employee list, (*Id.* at ¶ 19; CD 1119, 1157-59).

### III.

At a May 8, 1990 meeting, the Committee approved changes to the Pension Plan, the CCAP, and the ESOP, which had been adopted in the 1980s. (Def. SOMF, at ¶ 28; CD 1120, 1957-63). The meeting minutes indicate that "'Affiliated Employer' shall mean the Employer and any corporation which is a member of a controlled group of corporations . . . which includes the Employer; any trade or business (whether or not incorporated) which is under common control . . . with the Employer." (Pl. SOMF ¶ 2; CD 1958). Employees of an affiliated employer not participating in the Plans would "be eligible to be a Participant . . . in accordance with Subsection 2.2(A)(i) if such employee was not a Participant in the Bellemead Development Corporation Employee Profit Sharing Plan and the Chubb Life Profit Sharing Plan . . . ." (Plaintiffs' SOMF ¶ 3; CD 1960).

Pursuant to the express terms of the Pension Plan and CCAP, "Any subsidiary or affiliate may adopt [a] Plan by (1) having its board of directors adopt [the] Plan, and (2) obtaining the consent to such adoption by the [Chubb] Board of Directors." (CD 0006, 0095, 0276). The ESOP provides, "If any company is or becomes an Affiliate, the board of Directors may include the Employees of that Affiliate as eligible for participation in the Plan upon appropriate action by that Affiliate necessary to adopt the Plan." (CD 0451).

The parties do not dispute that the Bellemead board of directors adopted the CCAP in a November 7, 1991 meeting. (Defendants' SOMF at ¶ 28; Plaintiffs' CSOMF at ¶ 28; CD 1120). At a December 6, 1991 Chubb Board of Directors meeting, Bellemead adopted the CCAP and

Pension Plan. About six years later, on December 12, 1997, Chubb's Board of Directors amended the Plans to include an approved list of participating employers: Federal Insurance Company, Chubb Custom Insurance Company, Chubb Custom Market, Inc., and Chubb & Son of Illinois. (Defendants' SOMF at ¶ 30; CD 1171). The Board did so "in connection with . . . the transfer of employees to different payroll companies." (CD 1120, 1171; Defendants' SOMF at ¶ 31). Halifax was never named as a participating employer under the terms of the Plans. (Defendants' SOMF at ¶ 28; CD 1120, 1166).

Absent from the record is any indication that Halifax undertook the steps necessary to adopt the Plans. In early March 1998, Halifax created its own payroll system, which paid its employees directly and, the following year, created the Halifax Plantation 401(k) Profit Sharing Plan & Trust, of which Plaintiffs are participants.[4] (Defendants' SOMF at ¶¶ 20-21; *see* 1797-1826, 1902).

In 2012, Halifax "merge[d] the Halifax Plantation 401(k) Profit Sharing Plan & Trust . . . into the ADP TotalSource Retirement Savings Plan." (Defendants' SOMF at ¶ 22; CD 1119, 1160). Under this arrangement, all "personnel account information and account transaction history" from employees' plans were transferred to ADP, and ADP assumed responsibility for critical HR management processes, including payroll, benefits and policy administration. (Defendants' SOMF ¶22, 231 CD 1119, 1160-63). The record does not indicate that the new agreement affected Halifax's responsibility for overseeing the day-to-day activities of the employees. (*Id.* at ¶ 25; CD 1119, 1160-63).

In 2014, Needham was named President of Halifax and learned that Bellemead employees were entitled to Chubb-sponsored employee plans that were not available to Halifax employees.

---

[4] Plaintiffs' Counter Statement of Material Facts indicates this fact is "[u]nknown." (Plaintiffs' CSOMF at ¶ 20). However, the administrative record includes a document titled "Employee Notice Payroll Changes," which advised employees that on "March 8, 1998, there will be some payroll changes that we must plan for immediately." (CD 1902).

5

(Complaint at ¶¶ 20-23). On July 1, 2015, Plaintiffs submitted a claim for benefits with the Committee, contending that they were "entitled to the rights and benefits of the [CCAP] or [the ESOP]." (Complaint, ¶ 33; CD 0745; Defendants' SOMF, ¶ 34; CD 0745). According to the ERISA documents, with regard to the Pension Plan and the CCAP, the Committee had "the exclusive right to interpret [the Plans] and to decide all matters arising [t]hereunder, including the right to remedy ambiguities, inconsistencies or omissions in [the Plans]." (CD 0055; CD 0140-41; Defendants' SOMF ¶ 36, 37). In replying to Needham's claim, Carolyn Kennedy, the Chairperson of the Committee, responded with two letters. The first letter dated July 28, 2015, notified Plaintiffs' counsel that "as of October 29, 2004, [ESOP] merged with and became part of CCAP and ceased to exist as a separate plan." (CD 0795). The second letter, dated December 29, 2015, denied Plaintiffs' claims for benefits (hereinafter, "Initial Denial"), explaining that under both the CCAP and Pension Plan, only eligible employees and participating employers were entitled to participate in either plan. (Defendants' SOMF at ¶ 39; CD 760-63).

In the Initial Denial, the Committee determined that because Halifax was not a participating employer, Plaintiffs were not entitled to benefits under either plan. (*Id.*). In addition, the letter explained:

> Regardless of whether Halifax employees are or were under the review, supervision and control of [Bellemead] or of Chubb, or whether they are deemed to be or reclassified as employees of [Bellemead] or another Affiliate of [Bellemead] or Chubb, such characterization or reclassification does not create an entitlement of benefits if Halifax is not a Participating Employer.

(CD 762). In the Initial Denial, Kennedy set forth a review of Plaintiffs' claim, which, in pertinent part, provided:

> a. Under both the Pension Plan and the CCAP, an "Employee" of a participating "Employer" (a "Participating Employer") may participate in the respective Plans as long as the "Employee" is an "Eligible Employee" employed by a "Participating Employer."

6

> Thus, an "Employee" must be an "Eligible Employee" of a "Participating Employer" to be entitled to participate in the Pension Plan and the CCAP.
>
> b. Halifax is not a "Participating Employer" in either Plan.
>
> c. Halifax is a wholly-owned subsidiary of [Bellemead], and [Bellemead] is a wholly-owned subsidiary of The Chubb Corporation. For purposes of qualified retirement plans, while Halifax is a wholly-owned subsidiary of [Bellemead], it is not part of the Chubb or [Bellemead] "single employer" controlled group. Rather, Halifax is a separate corporate entity with a separate EIN (59-3137718) independent of The Chubb Corporation.
>
> d. The Chubb Corporation is a controlled group of corporations under Section 414(b) of the Code. Entities ("Members") of The Chubb Corporation Controlled Group ("Chubb's Controlled Group") are those listed in the attached Schedule A, "Attachment to Form 5300, Item #6b" of Chubb's 2013 Application for Determination for Employee Benefit Plan. Only those entities listed as part of Chubb's Controlled Group can be Participating Employers in the Pension Plan and the CCAP.
>
> e. [Bellemead] is listed as one of the entities of Chubb's Controlled Group on the attached Schedule A. [Bellemead] is therefore a Participating Employer.
>
> f. While [Bellemead] is listed as a member of Chubb's Controlled Group, Halifax is not identified on the attached Schedule A as a member of Chubb's Controlled Group. Accordingly, Halifax is not a member of, nor is it a Participating Employer in, Chubb's Controlled Group.

(Plaintiffs' SOMF at ¶10; CD 775).

On February 12, 2016, Plaintiffs appealed the Initial Denial to the Committee. (Defendants' SOMF at ¶ 43; CD 765-66). Pursuant to the rules governing claims for benefits in both the Pension Plan and the CCAP,[5] after a claim is denied, a claimant "may request such denial be reviewed by the Employee Benefits Committee by filing a written request for such review within 60 days after

---

[5] Both the Pension Plan and CCAP authorize the committee to establish "rules pertaining to claims procedure." (CD 55, 144, 320).

7

[the claimant] receive[s] the denial notice." (CD 219, 389). Plaintiffs did so, and appealed whether Halifax was part of Chubb's control group and "[w]hether or not the corporate formalities for Chubb, [Bellemead] and Halifax were observed." (CD 765-66).

Five months later, by letter dated July 12, 2016, the Committee upheld its Initial Denial on different grounds (hereinafter "Denial on Appeal"). (*Id.* at ¶ 35; ECF No. 32-4). The Denial on Appeal acknowledged that within the Initial Denial it had determined Halifax was not a participating employer, but it now concedes that Plaintiffs were on the payroll of Bellemead, a participating employer, for a period of time, but Plaintiffs had not performed any "service for the employer" (Bellemead) and are therefore not eligible for benefits. More specifically, in the Denial on Appeal letter of July 12, 2016, Carolyn Kennedy, Chairperson of the Committee, noted that the Committee's Initial Denial, finding "that Halifax is not a member of Chubb's controlled group of corporations" was incorrect. (CD 1106). She concluded, however, "that fact does not change the Committee's decision" regarding Plaintiffs' appeal. (*Id.*).

The Committee explained in the Denial on Appeal that it was relying on the rationale that the Plaintiffs may have been employees of Bellemead, but they had not provided any services for Bellemead required by the Plan's definition. The Denial on Appeal stated:

> The person must also receive "Compensation from the Employer." "Compensation" is defined in Section 1.10 as "the aggregate remuneration received by an Employee . . . for Service with an Employer . . ." Section 1.9 defines "Service with an Employer" as "any period of employment . . . as an Employee of an Employer."
>
> The language in these sections of the Pension Plan, in the Committee's view, reflect the bedrock requirement that an individual can be eligible to participate in the Pension Plan only if he receives Compensation from a participating Employer for services provided to that Employer.

8

(CD 1112; *see also* CD 1113 (CCAP), 1114 (ESOP)). The Committee next reviewed Plaintiffs' employment records, which included Halifax's "Weekly Timesheet Reports," "Salary Control Report," "Employees by Department and Payroll" Report, "Employees by Department & Date Hired" Report, and "Employees by Department and Payroll" report. (CD 1112). With those documents in mind, the Committee explained in the Denial on Appeal:

> Based on its interpretation of the terms of the Pension Plan in relation to these facts, the Committee has determined that [Plaintiffs] did not receive Compensation from a participating Employer (e.g., Bellemead) for services provided to that Employer. Instead, they received compensation from Halifax for services provided to Halifax, which is not a participating Employer in the Pension Plan.
>
> As such, [Plaintiffs] were not eligible to participate in the Pension Plan prior to March 1998 because they were not an individual "in the employment in the United States or on the United States payroll of an Employer and who receives Compensation from the Employer."

(*Id.*). The Committee came to this same conclusion, for the same reasons with regards to Plaintiffs' eligibility under the CCAP and ESOP. (CD 1113-14 (CCAP), 1114-15 (ESOP)).

With respect to Plaintiffs' employment after February 1998, the Committee observed that Halifax never adopted the Plans and Chubb never approved Halifax as a Participating Employer (even though it approved other subsidiaries as Participating Employers, effective in 1998). (CD 1115-1117; Def. SOMF ¶ 53). The Committee upheld its determination that Plaintiffs are not eligible to participate in the Plans after February 1998 because they are not "in the employment in the United States or on the United States payroll of an Employer and who receives Compensation from the Employer." or "employed by an Employer." (Defendants' SOMF ¶ 54; CD 1116-17 (discussing the Pension Plan, CCAP, and ESOP)).

Plaintiffs refute the Committee's Denial on Appeal because it was based on new grounds and the Plaintiffs had no opportunity to contest the new findings. Plaintiffs argue that they were

9

paid by Bellemead and were entitled to participate in the Bellemead plans. Moreover, according to Plaintiffs, the minutes of the May 8, 1990 meeting of the Committee had a different definition of "service to the employer" than the one relied upon in the Denial on Appeal. (Plaintiffs' CSOMF at ¶ 29; CD 1957-64). That is, "'Affiliated Employer' shall mean the Employer and any corporation which is a member of a controlled group of corporations . . . which includes the Employer; any trade or business . . . which is under common control . . . with the Employer . . ." (*Id.* at CD 1958). As such, the Meeting Minutes further provided that "any employee of an Affiliated Employer not participating in this Plan will be eligible to be a Participant if . . . in accordance with Subsection 2.2(A)(i), if such employee was not a Participant in the Bellemead Development Corporation Employee Profit Sharing Plan and the Chubb Life Profit Sharing Plan. . ." (*Id.* at Chubb-Dowman 001960. (ECF 48 ¶55)). Plaintiffs contend that this language supports their proposition that they are entitled to participate under the Plan.

## IV.

During the course of this litigation, Plaintiffs have requested discovery beyond the administrative record. (ECF Nos. 21, 22). Plaintiffs argued that discovery would assist in determining "whether or not there has been a misuse of the corporate form in order to disadvantage the Plaintiffs in terms of benefits received." (ECF No. 21, at 2). The discovery request was denied. (Feb. 6, 2018 Transcript, ECF No. 29 and 35)[6].

---

[6] Despite that decision, Plaintiffs continue to assert, in their statement of material facts, that additional discovery is necessary, arguing that several facts remain in dispute, specifically: whether Bellemead operated properties other than Halifax; whether a co-employer relationship existed between Halifax and ADP; whether Halifax undertook any steps necessary to adopt the Plans; whether Halifax employees were historically treated as eligible to participate in the Plans; and how the Committee deliberated prior to reaching its decisions. (See Plaintiffs' CSOMF ¶¶ 10, 23-25, 32, 33, 44-54) With regard to same, since the discovery request was previously decided, and Plaintiffs should have dealt with those issues when the claims were pending before the Committee, there is no reason to rethink a broad discovery request when it has already been decided.

10

Along the same lines, Plaintiffs annexed two documents to their brief ("Plaintiffs' Additional Documents"). Defendants move to strike these documents because they were not part of the administrative record. The first document is a letter dated September 14, 1998 from Halifax President Anthony Uanino to an insurance company account manager (Uanino Letter), and the second document is a declaration of Mr. Needham. More specifically, the Uanino letter stated in part:

> UNUM [Insurance] has a policy covering <u>Chubb employees</u> for short-term and long-term disability. After December 31, 1998, a small payroll subgroup currently covered under the main Chubb policy will be offered a separate long-term and short-term disability coverage. This is to inform you of that pending change.
>
> Specifically, all employees on the payroll entitled "Halifax Plantation Gold Management, Inc." will cease being covered by the Chubb policy. We will send a detail listing of the "terminations" at the end of December. The change is a result of our decision to have the Florida golf related operation be separate from the other Chubb operations. . . .

(emphasis added, Plaintiffs' Motion to Partial Summary Judgment, ECF No. 40, 41, Exhibit G, September 1998 Letter). Plaintiffs contend that they were "Chubb Employees" as referred to in the Uanino Letter during the time period before December 31, 1998. In addition, there is the certification of Mr. Needham, which states that he and Defendant Dowman "performed services for Bellemead during [their] entire tenure at . . . Halifax." (Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 52, Ex. A, Declaration of Jonathan Needham, ¶ 3). With regard to this motion to strike, the Plaintiffs' Additional Documents show, without assessing credibility or weight, that they may be relevant to the service of an employee issue, and therefore, may impact whether the record before the Committee was fair

and complete.[7] In short, the Denial on Appeal was based on a revised rationale, and consideration of the relevance of the Plaintiff's Additional Documents should be addressed in determining whether the Committee acted arbitrarily if it did not have a complete record. Ordinarily, "judicial review is limited to 'the record available to the plan administrator in making its own decision.'" *Dowman v. Chubb Corp.*, 16-CV-8129 (PGS)(LHG), 2018 WL 2973381, at 4 (D.N.J. June 11, 2018). Although the Court in an ERISA action does not consider evidence presented that is outside the administrative record, it has examined Plaintiffs' Additional Documents to determine whether Plaintiffs had relevant evidence to assert on the "service of employee" rationale. For that reason, Defendants' motion to strike is denied.[8]

## V.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In examining the record, the court gives the nonmoving party the benefit of all reasonable inferences from the record." *Horn v. Thoratec Corp.*, 376 F.3d 163, 166 (3d Cir. 2004). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of

---

[7] The Court afforded Defendants an opportunity to file a sur-reply, which they did on December 11, 2018. (ECF No. 64). Thus, Defendants suffered no prejudice by the Court's consideration of these documents.

[8] Similarly, Needham's declaration was provided for the first time in Plaintiffs' reply brief and therefore would ordinarily not be considered by this Court; another ground for the motion to strike. Ordinarily, "[a] moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *D'Alessandro v. Bugler Tobacco Co.*, 05-CV-5015 (JBS), 2007 WL 130798 at 2 (D.N.J. Jan. 12, 2007); *see Fancaster v. Comcast*, 832 F. Supp. 2d 380, 423-24 (D.N.J. 2011). However, at oral argument the Court permitted Defendants to file a sur-reply, which they did on December 11, 2018. (*See* ECF No. 64). The Court considered same, thus giving Defendants an "opportunity to full and fairly respond to [Plaintiffs'] arguments." *Fancaster*, 832 F. Supp. 2d at 424.

the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor 'that no reasonable jury could find for him, summary judgment is appropriate.'" *Alevras v. Tacopina*, 226 Fed. App'x 222, 227 (3d Cir.2007).

## VI.

Defendants contend Plaintiffs' claims against Chubb, Bellemead, and Halifax must be dismissed because, under the statute, they did not have the discretionary authority to administer Plaintiffs' claims for benefits. Generally, "[i]n a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, 311 Fed

App'x 556, 558 (3d Cir. 2009). "Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)." *Id.* "Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Id.* at 558-59 (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). Pursuant to the express terms of the Plans, the Committee – not Chubb, Bellemead, or Halifax – was delegated with exclusive authority to administer benefits. (CD 0055, 0140-41, 0443). Because no defendant other than the Committee had discretion to administer benefits under the Plans, the motion for summary judgment is granted in favor of Chubb, Bellemead, and Halifax.

## VII.

A participant in an ERISA benefit plan who is denied benefits by the plan's administrators may bring an action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "Where a plan administrator is vested with the discretionary authority to construe the terms of a plan or determine benefit eligibility, we review its decisions under an arbitrary and capricious standard." *McCann v. Unum Provident*, 907 F.3d 130, 147 (3d Cir. 2018). Because all Plans at issue gave the administrator discretion over their interpretation, the applicable standard of review here is abuse of discretion.

A plan administrator's decision will be deemed arbitrary and capricious "if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. Am.*

*Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (citing *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). Evidence is substantial when "there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000). The scope of this review is narrow. *McCann v. Unum Provident*, No. 11-CV-3241, 2013 WL 1145422, at *11 (D.N.J. Mar. 18, 2013). The court reviews only for abuse of discretion and may not substitute its judgment for that of the plan administrators. *Id.*

In that sense, the court "sits more as an appellate tribunal than as a trial court." *Id.* at 10. The decision of the administrator "will be overturned only if it is 'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" *Maciejczak v. Procter & Gamble Co.*, 246 Fed. App'x 130, 131 (3d Cir. 2007). In applying the arbitrary and capricious standard, plaintiff carries the burden of demonstrating that he qualifies for the benefits requested and that the administrator's decision was arbitrary and capricious. *Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, 796 F.Supp.2d 568, 580 (D.N.J. 2011).

ERISA does not require employers to establish employee benefits plans. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). "Neither does it require that every employee is entitled to participate in a plan that it does decide to offer . . . ." *Bauer v. Summit Bancorp*, 325 F.3d 155, 159 (3d Cir. 2003). "What ERISA does require, however, is that if an employer decides to provide a plan, that plan is subject to certain minimum requirements regarding participation, funding and vesting standards." *Id.* "Once a court finds that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits." *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11, 24 (1st Cir. 2003); *see also Miller v. Am. Airlines, Inc.*, 632 F.3d at 856-57.

The Committee reviewed the definitions of "Employee," "Employer," "Eligible Employee," "Participating Employer," and "Compensation" which led to its conclusion "that an individual can be eligible to participate in the Pension Plan only if he receives Compensation from a participating Employer for services provided to that Employer." (CD 1112). This interpretation was reflected in the Committee's Denial on Appeal that plaintiffs "did not receive Compensation from a participating Employer (e.g. Bellemead) for services provided to that Employer. Instead, they received compensation from Halifax for services provided to Halifax, which is not a participating Employer in the Pension Plan." (CD 1112). Chubb also did not include Halifax in a list of participating employers approved in a December 12, 1997 Board of Directors meeting. (Kennedy Decl., Ex. I, Information Provided to Committee, at 1120, 1171).

The Committee thoroughly evaluated Plaintiffs' employment records, including Halifax's "Weekly Timesheet Reports," "Salary Control Report," "Employees by Department and Payroll" Report, and "Employees by Department & Date Hired" Report. (*See* CD 1112). However, the Committee conceded in the Denial on Appeal that Halifax was within Chubb's control group, as defined by Section 414(b) of the IRS Code.[9] (CD 1106), and as indicated in Plaintiffs' Additional Documents, it appears that Plaintiffs were also listed on Bellemead's payroll.

---

[9] Subsection 414(b) of the IRS Code provides:

> For purposes of sections 401, 408(k), 408(p), 410, 411, 415, and 416 [of Title 26], all employees of all corporations which are members of a controlled group of corporations . . . shall be treated as employed by a single employer. With respect to a plan adopted by more than one such corporation, the applicable limitations provided by section 404(a) shall be determined as if all such employers were a single employer, and allocated to each employer in accordance with regulations prescribed by the Secretary.

26 U.S.C. § 414(b).

More importantly, until the issuance of the Denial on Appeal, Plaintiffs were not on notice that the definition of "service provided" would be the criteria upon which the Committee would rest its decision. As such, Plaintiffs were not provided an opportunity to appeal that specific issue. Moreover, the Committee should consider whether Plaintiffs' Additional Documents are relevant. For example, Mr. Needham's declaration states that he "performed services for Bellemead during [his] entire tenure at the Halifax Plantation property as has Mr. Dowman, as one of [his] Department Heads"; and since 1997, Bellemead had no other properties that it managed other than Halifax. (Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 52, Exhibit A, Declaration of Jonathan Needham at ¶¶ 3, 5). Similarly, the Uanino letter indicated that in 1998 Chubb decided "to have the Florida golf related operation be separate from the other Chubb operations." (Plaintiffs' Motion to Partial Summary Judgment, ECF No. 40, 41, Exhibit G, September 1998 Letter). Obviously, the inference can be drawn that prior to the date of the letter, the employees were considered as participating employees and these documents must be assessed.

In sum, the Committee relied on incorrect information in the Initial Denial. Subsequently, and without notice to Plaintiffs, the Committee acknowledged it relied on incorrect statements and then switched to a different rationale in the Denial on Appeal. In light of the "about-face," Plaintiffs had no opportunity to address that issue through an appeal or to supplement the administrative record before the Committee. The Committee's change of position contravened the provisions of ERISA, which requires the Committee to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133(1). The Committee must also "afford a reasonable

More importantly, until the issuance of the Denial on Appeal, Plaintiffs were not on notice that the definition of "service provided" would be the criteria upon which the Committee would rest its decision. As such, Plaintiffs were not provided an opportunity to appeal that specific issue. Moreover, the Committee should consider whether Plaintiffs' Additional Documents are relevant. For example, Mr. Needham's declaration states that he "performed services for Bellemead during [his] entire tenure at the Halifax Plantation property as has Mr. Dowman, as one of [his] Department Heads"; and since 1997, Bellemead had no other properties that it managed other than Halifax. (Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 52, Exhibit A, Declaration of Jonathan Needham at ¶¶ 3, 5). Similarly, the Uanino letter indicated that in 1998 Chubb decided "to have the Florida golf related operation be separate from the other Chubb operations." (Plaintiffs' Motion to Partial Summary Judgment, ECF No. 40, 41, Exhibit G, September 1998 Letter). Obviously, the inference can be drawn that prior to the date of the letter, the employees were considered as participating employees and these documents must be assessed.

In sum, the Committee relied on incorrect information in the Initial Denial. Subsequently, and without notice to Plaintiffs, the Committee acknowledged it relied on incorrect statements and then switched to a different rationale in the Denial on Appeal. In light of the "about-face," Plaintiffs had no opportunity to address that issue through an appeal or to supplement the administrative record before the Committee. The Committee's change of position contravened the provisions of ERISA, which requires the Committee to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133(1). The Committee must also "afford a reasonable

opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133(2).

Since Plaintiffs were unable to submit Plaintiffs' Additional Documents to the Committee, no full and fair review of the Denial on Appeal has occurred. The most appropriate remedy is to remand to the Committee. Due to the Committee's unilateral change of position, Plaintiffs should be allowed to litigate the issue before the Committee. *See Miller*, 632 F.3d at 856; *Cook*, 320 F.3d at 24. Therefore, the matter is remanded to provide Plaintiffs an opportunity to appeal the new rationale, and allow the Committee to consider same, and other facts as well, in their discretion.

## VIII.

For the foregoing reasons, Defendants' motion for summary judgment, (ECF No. 38), is granted in part and denied in part. Defendants' motion for summary judgment in favor of Chubb, Bellemead, and Halifax is granted; but the motion for summary judgment in favor of the Committee is denied. Plaintiffs' motion for partial summary judgment, (ECF Nos. 40, 41), is also granted in part and denied in part. The Court finds the Committee's decision was arbitrary and capricious but shall remand the matter to the Committee for its review. Defendants' motion to strike evidence outside the administrative record, (ECF 56), is denied for purposes of this motion. The Committee should determine whether the Additional Documents are relevant.

_____
PETER G. SHERIDAN, U.S.D.J.